HAWTHORNE, Justice.
 

 Plaintiff, Mrs. Agathe Guidry Breaux, instituted this suit seeking to have declared null and void a donation inter vivos, made by her to the defendants, Mrs. Hilda Lavio-let Savoie and her two minor children, Brunella and Calvin Patrick Savoie, of certain property containing 135 acres more or less, situated in Acadia Parish, upon the ground that the donation was made through fraud and error.
 

 From a judgment in favor of defendants, dismissing plaintiff’s suit, she has appealed.
 

 Plaintiff, widow of Albert Breaux, was •65 years of age at the time of the trial. Although the record does not disclose whether the plaintiff and the defendant Mrs. Sa-voie were related by blood, the trial judge informed us in his reasons for judgment that Mrs.' Savoie was -an orphan child reared- by the plaintiff in her home, and Mrs. Savoie referred to plaintiff throughout her testimony as her. mother.
 

 , On'.March 31, 1947, Mrs.-L. P, Thomas, ■who had known the plaintiff for about 14 or 15 years, at plaintiff’s request went to see a reputable attorney and notary public in the Town of Rayne, informed him that Mrs. Breaux would like to make a donation to Mrs. Savoie and her children, and asked that he go to the home of Mrs. Savoie to interview Mrs. Breaux in regard to the matter. Mrs. Thomas was accompanied to the attorney’s office by Mrs. Savoie. Pursuant to this request, the attorney went to the home of Mrs. Savoie on that same afternoon, March 31, and at that time Mrs. Breaux informed him that she desired to make a donation to Mrs. Savoie and her children of the 135 acres subsequently described in the act of donation. The attorney then returned to his office and prepared the act. On the following day, accompanied by his stenographer, he again went to the home of Mrs. Savoie. In the presence of the stenographer, Mrs. Thomas, and Mrs. Savoie, he carefully read the document to plaintiff paragraph by paragraph, and translated each paragraph from English into French because Mrs. Breaux could not read or clearly understand the English language. He explained to plaintiff that the act would vest immediate ownership of the property in the donees. ' After the act had'been read and explained to the donor in detail; she' signed the act of dona-' tion, and the donee named therein; 'in he^ half of herself and her-minor childrefl, also signed it. Both 'signatures.were affixéd in the presence.iof tbéjnotáry^nd.the/steilog-rapher and Mrs. Thomas signed ,.^’¡witnesses. By mutual agreement it was at that
 
 *91
 
 time decided that the donor was to receive the proceeds of the crop then being grown and cultivated on the property by tenants, and that she would pay the taxes for that year.
 

 This act of donation, which is dated April 1, 1947, recited that Mrs. Breaux declared that the donation was made in consideration of the love and affection which she bore for Mrs. Savoie and her two children, and that she looked upon these children as her own, since Mrs. Savoie had been reared in her home. This act also recited that the property therein donated was only a part of the property owned by the donor, that it did not exceed the disposable portion, and that she had sufficient other property to take care of her needs for the remainder of her natural life.
 

 ' Plaintiff alleged in her petition that she signed the act of donation believing at the time that she was making a last will and testament bequeathing the property to Mrs. Savoie and her two minor children; that the attorney who read the act to her made the following statement in French prior to her signing: “That is going to be for Hilda and her children after your death”; and that defendant Mrs. Savoie, who knew of her desire and intention to make a last will, perpetrated a fraud upon plaintiff by silently
 
 and
 
 without action standing .by while 'the alleged donation was signed by plaintiff.
 

 The trial judge found that the proof did not disclose even a suggestion of fraud, and after reading the record we are fully in accord with his finding. As a matter of fact, although fraud was alleged, the plaintiff herself did not testify to any fact showing or even suggesting fraud, for her testimony, in sum, merely reiterated that she did not understand the effect of the document which she signed, and in our opinion her testimony as to this is successfully rebutted by that of other witnesses. The attorney who prepared and notarized the act of donation 'testified in the case, and his testimony is substantiated by that of his stenographer, Miss Josie Petitjean, and Mrs. Thomas, two disinterested witnesses. After reading and analyzing all the testimony, we entertain no doubt that the document was fully explained to plaintiff; that she understood that she was making a donation inter vivos, to take effect immediately, and that she was not told at any time that the document was a last will and testament under which the property was to go to Mrs. Savoie and her children only after plaintiff’s death. Moreover, as pointed out by the trial judge, the attorney’s testimony that he informed her that the act was to take effect immediately is not contradicted anywhere by the plaintiff herself.
 

 As bearing upon the motivation behind the bringing of
 
 this
 
 suit to annul the act of donation, we find both interesting and significant the testimony of Mr, Leroy
 
 *93
 
 Breaux, one of plaintiff’s witnesses. Mr. Breaux is the son of a deceased foster son of the plaintiff and her husband. After the death of plaintiff’s husband, Mr. Leroy Breaux acted as manager and overseer for her, and was farming a portion of the 135-acre tract described in the donation. Mrs. Breaux made a last will and testament leaving all her property to Leroy Breaux and his two brothers, and he unhesitatingly admitted in testimony that he was very much interested in the outcome of this suit, and that, if the plaintiff were unsuccessful in having the donation declared null and void, there was no chance for him to receive any interest in this piece of property under her will. This suit was filed within a few months after Leroy Breaux discovered the existence of the act of donation by a visit to the courthouse where it was recorded, and it was he that employed the attorneys who represented the plaintiff in this case, although he maintained that he did so at the request of the plaintiff. From all this the conclusion is inescapable that this is Mr. Leroy Breaux’ suit, and that he is more interested in the outcome of the litigation than is the plaintiff.
 

 For the reasons assigned, the judgment appealed from is affirmed at plaintiff-appellant’s costs.
 

 O’NIELL, C. J., takes' no part..